IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2001

### STATE OF TENNESSEE v. JEANNIE HUDSON

**Direct Appeal from the Circuit Court for Sevier County**
**No. 7401     Rex Henry Ogle, Judge**

_____

**No. E2001-00377-CCA-R3-CD**
**February 19, 2002**

After pleading guilty to aggravated assault and receiving a sentence of split confinement of three years with nine months to be served day-for-day, defendant appeals her sentence. She requests full probation or allowance of good conduct credits while serving the incarceration portion of her sentence. We affirm the denial of full probation and reverse that portion of the sentence that provides day-for-day service. We hold that a defendant sentenced to the county jail for less than one year is entitled to earn good conduct credits pursuant to Tennessee Code Annotated section 41-2-111(b).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Edward Cantrell Miller, District Public Defender, and Susanne Bales, Assistant District Public Defender, for the appellant, Jeannie Hudson.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Charles Edward Atchley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Sevier County grand jury indicted defendant, Jeannie Hudson, on October 6, 1998, on one count of aggravated assault, a Class C felony. Defendant pled guilty to the offense on October 30, 2000. On February 13, 2001, the trial court sentenced defendant to a nine-month period of incarceration to be served day-for-day in the Tennessee Department of Correction.

The trial court ordered the remainder of defendant's sentence to be served on probation. This appeal timely followed.

## Facts

At defendant's sentencing hearing, the victim, Bonnie Jean Brooks, testified that in June of 1998 she was temporarily staying with Don Vance. On the day of the offense, the victim was at Vance's trailer to wait for a bus she was to catch that afternoon. She testified that a few people were at Vance's home sitting around and talking when defendant arrived with her boyfriend and his children. Ms. Brooks testified that she did not recall interacting with defendant prior to the assault. She stated that she remembered talking to Vance, then turned to the left, and defendant was on top of her. She also testified that she remembered defendant's "foot coming down" on her head. She also testified that she heard someone say, "[s]hut up," and asked if they were talking to her. She said that defendant stated that Ms. Brooks did not know when to shut up. The court then acknowledged that the victim's face did show a footprint. The victim testified that the next thing she recalled was Mr. Vance wiping her face with a wash rag. The victim was placed in a back bedroom where she spent the rest of the night.

The victim testified that she vaguely remembered going to the hospital the next day. Her injuries did not require an overnight stay in the hospital. The assault caused bleeding inside the skull; however, medical intervention was not necessary to correct the problem. The victim stated that she has difficulty with her right ear but has not suffered any permanent hearing loss. She stated that she could not see for more than a week because both of her eyes were swollen shut. Pictures of her injuries were introduced at the hearing. The pictures showed discoloration of the victim's face due to the bleeding inside the skull. The victim stated that she took the photographs less than a week after the attack. She further stated that the condition seen in the photographs remained for a month or more. The victim further testified that she believed that defendant attacked her because defendant was jealous as the victim once dated defendant's boyfriend. However, the victim stated that she believed there were other people involved. She further stated that she believed Mr. Vance had been involved in the offense and that he had previously threatened her and held a knife to her throat.

On cross-examination, the victim acknowledged that everyone present that evening had been drinking. She stated that she consumed "three or four beers." She also stated that some people present were "drunk." She recalled that Mr. Vance "was bragging afterwards to everybody around town that he pretty much wanted to finish [her] off."

The victim stated that she lost her job as a result of the attack and that she could not work for a month and a half following the attack. Her estimated medical expenses were $3,000.00. She stated that she did not have insurance and that her medical expenses were not paid. She also stated that she anticipates more treatment for her jaw. Because she lost her job, she lost custody of her child.

Defendant testified on her own behalf. She stated that she lived in Waterford, Mississippi, where she was employed as a receptionist and bookkeeper. Defendant stated that

she, along with her boyfriend and his children, visited Mr. Vance's home on the night of the offense. She admitted that she consumed alcohol that evening. She acknowledged hitting Ms. Brooks three or four times. However, defendant stated that she did not stomp on Ms. Brooks and that she did not hit Ms. Brooks with her fist. Defendant said that when she left, Ms. Brooks did not have serious injuries. Further, Ms. Brooks was "standing up" and there were "no bruises." Lastly, defendant stated that she was mad at Ms. Brooks because Ms. Brooks would not leave the children alone.

On cross-examination, defendant admitted that she previously pled guilty in Hardin County for public drunkenness and possession of drug paraphernalia. She also admitted that she previously pled guilty in Mississippi for public drunkenness.

At the conclusion of the hearing, the trial court found that a period of incarceration was justified in this case. The judge stated that the damage inflicted on the victim's face was "as bad as anything" he had seen. The judge also stated that he believed the victim's version of events over defendant's version of events. The court stated

> These pictures speak a thousand words of what happened to this lady in this case and the court obviously is well aware of the sentencing considerations and the court obviously knows that those who are least violent and so forth are eligible for probation. But the court would also be remiss in this case based upon the damage that was done to the face of this lady and the way it was done. The imprint of the foot on the face of this victim is very noticeable and the damage to her face. As I say, I have not seen any photographs of living people whose faces had more damage than this lady here.

The court took note of defendant's prior convictions and stated that it would depreciate the seriousness of the offense if no jail time were ordered in this case. The court then ordered a nine month period of incarceration to be served day-for-day in jail with the remainder of defendant's three-year sentence to be served on probation. Judgment was entered on February 13, 2000.

### Analysis

Defendant challenges her sentence on two grounds. First, defendant asserts that the trial court improperly ordered her to serve nine months of her sentence day-for-day in confinement. Second, defendant asserts that the trial court should have ordered full probation rather than split confinement. We affirm in part and reverse in part.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."

State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to determinations made by the trial court, which are predicated upon uncontroverted facts.  State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994).

The defendant, as the party challenging the sentence imposed by the trial court, has the burden of establishing that his sentence was erroneous.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311.  In determining whether the defendant has shown that the sentence imposed by the trial court was erroneous, this Court considers: (a) any evidence received at the trial and/or sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; (f) any mitigating or enhancing factors; (g) any statements made by the accused in his own behalf; and (h) the accused's potential, or lack of potential, for rehabilitation or treatment.  Tenn. Code Ann. § 40-35-103 and -210; see State v. Parker, 932 S.W.2d 945 (Tenn. Crim. App. 1996); State v. Brewer, 875 S.W.2d 298 (Tenn. Crim. App. 1993).

Because the Appellant was convicted of a Class C felony, she is entitled to the presumption that she is a favorable candidate for alternative sentencing.  See Tenn. Code Ann. § 40-35-102(6).  Accordingly, the trial court imposed a sentence of split confinement, which is listed as a sentencing alternative in Tennessee Code Annotated § 40-35-104(4).

I.      *The Trial Court's Imposition of a Nine Month Day-For-Day Sentence of Incarceration*

Defendant submits that it was improper for the trial judge to sentence defendant to incarceration for nine months day-for-day in the county jail.  We agree with defendant.

Pursuant to Tennessee Code Annotated section 40-35-501(c), a Range I standard offender shall gain release eligibility after thirty percent of the sentence is served.  The sentencing range for Class C felonies, Range I, is three to six years.  Tenn. Code Ann. § 40-35-112(a)(3) (1997).  Thus, with a three-year minimum sentence, this defendant would be eligible for release after 10.8 months.  This Court has ruled that the period which a defendant is ordered to serve in split confinement cannot exceed what would otherwise be the release eligibility date.  State v. Glynnon Bradshaw, No. 01C01-9810-CR-00439, 1999 WL 737871, at *2 (Tenn. Crim. App., Knoxville, Sept. 22, 1999).

In the instant case, defendant was only sentenced to nine months incarceration, a sentence that falls within the range of the sentencing guidelines.  However, defendant asserts that the day-for-day confinement deprives her of good conduct credits and is therefore improper.  We agree.

Tennessee Code Annotated section 41-2-111 states the following:

(a) In all cases where a person is by law liable to be imprisoned in the county jail for punishment, or for failure to pay a fine, such person shall be sentenced to be confined, and shall be confined, at hard labor in the county workhouse until the expiration of the sentence of imprisonment or, subject to the limitations imposed by § 40-24-104, until the fine has been worked out, paid or secured to be paid.

(b) Each such prisoner who has been sentenced to the county jail or workhouse for any period of time less than one (1) year on either a misdemeanor or a felony, and who behaves uprightly, shall have deducted from the sentence imposed by the court time equal to one quarter (1/4) of such sentence. Fractions of a day's credit for good time of one half (½) or more shall be considered a full day's credit…

In two recent cases, this Court has stated that a "defendant sentenced to the county jail for less than one year is entitled to earn good conduct credits." State v. Barnes, No. E2001-00325-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 936, at *24 (Tenn. Crim. App., at Knoxville, Dec. 10, 2001); see State v. Clark, No. M2000-00862-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 548, at * 10-12 (Tenn. Crim. App., at Nashville, July 25, 2001), app. filed (Tenn. Sept. 13, 2001) (ordering driving under the influence sentence to be served in confinement at 100% cannot preclude applicable conduct credits). A trial court cannot deny a defendant this statutory right. Id.; see State v. Underwood, No. E2000-09-1945-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 585, at *8-9 (Tenn. Crim. App., at Knoxville, Aug. 2, 2001). Recent Tennessee Attorney General opinions have also expressed this view. See Op. Tenn. Att'y Gen. No. 00-051 (Mar. 20, 2000) (judgment cannot require county jail inmate to serve less than one year "day-for-day" so as to deprive inmate of good conduct credits); Op. Tenn. Att'y Gen. No. 96-061 (Apr. 4, 1996) (county jail inmate serving split confinement of six months followed by probation may earn good conduct credits or authorized work program credits toward the six months, but not both); Op. Tenn. Att'y Gen. No. 91-96 (Dec. 4, 1991) (felony inmate sentenced to split confinement of six months in county jail followed by two years of supervised probation may earn good conduct credits or authorized work credits toward the six months, but not both). We also note that this Court has cited Tennessee Attorney General Opinion No. 91-96 "for a discussion of proper sentencing credits to be applied toward jail time during split confinement." State v. Rigney, 1997 Tenn. Crim. App. LEXIS 388, No. 01C01-9605-CC-00212, Coffee County (Tenn. Crim. App. Apr. 24, 1997), app. denied (Tenn. Dec. 29, 1997).

We conclude that the application of any good conduct credits defendant may earn while incarcerated in the county jail must be employed so as to decrease the amount of time that defendant shall be incarcerated.

*II.      The Trial Court's Imposition of Split Confinement Rather Than Full Probation*

In the instant case, defendant challenges the trial court's imposition of split confinement and argues that the trial court should have ordered full probation. We disagree.

Probation is a privilege that may be granted to a defendant deemed "eligible and worthy of this largesse of the law." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). The defendant must carry the burden of establishing that he is entitled to this privilege. Dykes, 803 S.W.2d at 259.

As on appeal, a defendant bears the burden in the trial court of demonstrating that total probation, rather than split confinement, will "'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). In determining whether a defendant has satisfied her burden, the trial court considers the following factors: the nature and circumstances of the criminal conduct, Tenn. Code Ann. § 40-35-210(b)(4) (1997); the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35- 103(5) (1997); whether a sentence of total probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and whether a sentence other than total probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997); Bingham, 910 S.W.2d at 456. A defendant's potential or lack of potential for rehabilitation may, in turn, be demonstrated by circumstances such as her criminal record, his social history and present condition, and her candor before the court. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

"In order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454. "That having been said, circumstances that do not rise to the level required to justify a denial of any alternative sentence may nevertheless justify a denial of full probation." State v. Shields, W2000-1524-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 18, at *28 (Tenn. Crim. App., at Jackson, Jan. 4, 2002) citing Bingham, 910 S.W.2d at 456; see also State v. Ware, No. 01C01-9803-CC-00129, 1999 WL 378341, at *9 (Tenn. Crim. App., at Nashville, June 11, 1999).

In the instant case, the trial court found that time spent in incarceration was necessary so as not to depreciate the seriousness of the offense. After viewing photos of the victim's injuries, the trial court stated as follows:

> I'll be real honest with you. I have sat on a lot of cases in this Court since 1990 and except for cuttings and shootings, the damage inflicted to this victim's face, particularly her face, is as bad as anything I've ever seen.

* * *

These pictures speak a thousand words of what happened to this lady in this case and the Court obviously is well aware of the sentencing considerations and the Court obviously knows that those who are least violent and so forth are presumed eligible for probation. But the Court would also be remiss in this case based upon the damage that was done to this lady and the way it was done. The imprint of the foot on the face of this victim is very noticeable and damage to her face. As I say, I have not seen any photographs of living people whose faces had more damage than this lady here.

First, because of the damage inflicted upon the victim's face, it is clear that the trial court found the nature of the offense to be serious and offensive. Second, the trial court found that due to the nature of the offense, a sentence of incarceration was necessary. Both of these principles are supported by the sentencing guidelines we note above.

Lastly, at the time of her arrest, defendant had a history of criminal activity, including arrests for public intoxication and possession of illegal drugs in Hardin County, Tennessee, and public intoxication in Alcorn, Mississippi. Again, these factors are supported by our sentencing guidelines and are to be implemented when a trial court sentences a defendant. The trial court followed the relevant factors applicable to this case. As such, we affirm the trial court's denial of full probation.

**CONCLUSION**

Accordingly, we affirm the trial court's judgment regarding split confinement, but we reverse the trial court's judgment regarding the nine month day-for-day sentence and conclude that there is no preclusion of the applicable conduct credits.

_____
JOHN EVERETT WILLIAMS, JUDGE