# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 26, 2002

## STATE OF TENNESSEE v. TRECA FINCHUM

**Direct Appeal from the Circuit Court for Sevier County**
**No. 8071     Richard R. Vance, Judge**

**No. E2001-01072-CCA-R3-CD**
**October 2, 2002**

A Sevier County jury convicted the Defendant of theft of property valued over $500 and of contributing to the delinquency of a minor. The trial court sentenced the Defendant as a Range I, standard offender to two years for the theft conviction and to eleven months and twenty-nine days for the contributing to the delinquency of a minor conviction, to run concurrently. The trial court also ordered sentences of split confinement, with the Defendant to serve ninety days in jail, "day for day," and the balance of each sentence to be served on supervised probation. The Defendant now appeals, arguing the following: (1) that insufficient evidence was presented at trial to convict her of theft and of contributing to the delinquency of a minor; (2) that the admission into evidence of a list of items stolen from Wal-Mart was inadmissible hearsay; (3) that the trial court committed reversible error by excluding a statement against interest from an unavailable witness; and (4) that the trial court erred in sentencing her. After a review of the record, we affirm the judgments of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed as Modified and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined and JAMES CURWOOD WITT, JR., J., concurred in the result only.

Susanne Bales, Dandridge, Tennessee (on appeal); Michael Rasnake and Charles I. Poole, Sevierville, Tennessee (at trial), for the appellant, Treca Finchum.

Paul G. Summers, Attorney General and Reporter; Gill Robert Geldreich, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Steven R. Hawkins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTS

Danny Crowe, a loss prevention associate for Wal-Mart in Sevierville, Tennessee, observed the Defendant, along with another adult female and two juvenile females, in the shoe department of Wal-Mart shortly after noon on December 31, 1999. Crowe testified that the females, one of whom he identified as the Defendant, were standing around a shopping cart full of merchandise. Crowe observed all four persons "stuffing" merchandise into their large purses. Crowe continued to watch as the Defendant took two silver vests out of the shopping cart, removed the tags, and gave a vest to each of the juveniles to wear. The juveniles put them on and proceeded to exit the store with the second adult female. Crowe observed the Defendant, who remained in the store, put more merchandise into her shopping cart. The second female and the two juveniles returned with empty purses, and the juveniles were no longer wearing the silver vests. Crowe watched as the four females again stuffed their purses with merchandise. Crowe then saw the Defendant and the two juveniles exit the store while the second adult female stayed behind. Crowe stated that the Defendant and the two juveniles walked around the cash registers, left the store, and got into a blue Ford Explorer.

Crowe testified that he saw the Defendant start the Explorer, pull it forward one parking space, and turn the engine off. Crowe decided to approach the vehicle to recover the stolen merchandise. Crowe stated that he approached the driver's door and knocked on the window, but the Defendant ignored him. Crowe then opened the door, informed the occupants of the vehicle that he was a member of Wal-Mart security, and requested that they step out of the car and return the merchandise. Crowe testified that the Defendant became "hysterical," threw a milkshake and a Coke at him, cursed at him, and slapped him. Crowe reported that the Defendant next tried to put her keys in the ignition, but Crowe was able to block the keys with his hand, whereupon the keys fell between the seats. Crowe testified that the Defendant then reached down between the seats and pulled out a knife. Crowe immediately took the knife away from the Defendant. Crowe stated that he pulled the Defendant out of the vehicle and held her on the ground. Crowe testified that the two juveniles got out of the vehicle and began hitting Crowe on his back. Crowe recalled that he eventually let the Defendant stand up and asked her to come inside the store. However, according to Crowe, the Defendant refused to cooperate and did not go back inside the store until she was handcuffed by police. Crowe testified that one of the juveniles fled the scene and that he never saw the other adult female again. The remaining juvenile, later identified as Keisha Chandler, was also arrested.

After the Defendant was arrested, Crowe retrieved the stolen merchandise from the vehicle and totaled the items that had Wal-Mart price tags on them. Crowe testified that the value of the items stolen by the Defendant was $638.41. The State entered into evidence a list, compiled by Crowe, of items taken by the Defendant. Crowe testified that his computer would only allow him to enter ten items by hand, and any more items had to be totaled and added to the first ten. Crowe identified the items which included clothing, compact discs, and movies. The items were placed in a box for the jury to view.

Keisha Chandler testified that she was fifteen years old when this incident occurred. She stated that the Defendant drove her; Christine Williamson; Williamson's daughter, Rianna; and the Defendant's son, Mitchell, to Wal-Mart. Chandler stated that once they were inside the store, the Defendant handed her a purse and started stuffing items into it. Chandler testified that the Defendant

then started stuffing items into all of their purses and asked them to take the items out of the store. Chandler also testified that the Defendant gave her a vest to wear and told Chandler and Rianna that they did not have to pay for anything. Chandler then went outside, emptied her purse into the back of the Explorer, and returned inside for more items. Chandler testified that the Defendant filled everyone's purses again and went outside with her and Rianna to the Explorer. Chandler reported that a man approached the car and told them that they needed to return the merchandise to the store, whereupon the Defendant threw a milkshake and other things at the man. According to Chandler, the Defendant then reached underneath the seat, started to pull out a little bat, and then pulled out a knife. Chandler testified that the man grabbed the knife and then grabbed the Defendant and pulled her out of the car. Chandler testified that she jumped on the man's back and that Rianna ran away. Chandler said that Williamson and Mitchell probably stayed inside the store, and she reported that Mitchell did not participate in the theft. She testified that all the items contained in the box for the jury to view were taken from the Wal-Mart store on the day in question.

The Defendant testified that on the day of the incident, she picked up her friend, Christine Williamson, whom she called Tina, and Williamson's daughter, Rianna. The Defendant stated that she, Williamson, Rianna, Mitchell, and Chandler were "going to make a day of it." The Defendant testified that they shopped at Goody's and Family Dollar before going to Wal-Mart. She stated that her son had been given some jeans by "Toys for Tots" that were too small, and she wanted to exchange them for the proper size. The Defendant recalled that while they were in Wal-Mart, the juvenile girls approached her wearing vests and asked if they could get them. The Defendant testified that she told the girls that she would buy the vests with Chandler's father's credit card. She stated that the girls went off somewhere, and she went outside to get her son's jeans so that she could exchange them. The Defendant testified that when she went outside, started her vehicle, changed parking spaces, and then remained in her car to smoke a cigarette. The Defendant recalled that her son came out to the vehicle and got inside. The Defendant stated that as she was asking him why he left the store, she looked up and saw Rianna and Chandler running out of the store. The Defendant reported that Rianna and Chandler then jumped into the back of the vehicle.

The Defendant testified that a man identifying himself as Scott Belcher with Wal-Mart security approached the car and asked the Defendant to return his things. The Defendant stated that the man refused to show his identification, and he then asked her to come into the store with him. According to the Defendant, when she refused to go with him, the man tried to grab her keys from the ignition and knocked them between the seats. The Defendant testified that when she leaned over to get the keys, the man saw her son's hunting knife on the floor of the vehicle. The Defendant stated that the man grabbed her by the head and pulled her out of the car, breaking the door handle in the process. He then rammed her head into the rear fender of the vehicle, leaving a dent, and pushed her to the pavement and pinned her with his knee. The Defendant testified that Rianna and Mitchell ran away, but Chandler stayed behind and jumped on the man's back. The Defendant recalled that the man slung Chandler off his back. The Defendant testified that an off-duty Gatlinburg policeman came and separated the Defendant and the man.

The Defendant stated that the items in the box for the jury to view belonged to her, but she maintained that she had not stolen them from Wal-Mart. She testified that she had receipts for some of the items and offered the receipts as evidence. The Defendant denied ever throwing a milkshake or a Coke at Danny Crowe, and she denied ever grabbing a knife. She claimed that Chandler's mother had set Chandler up to lie, and she maintained that Crowe was lying because he had mistaken her for Williamson. The Defendant's son, Mitchell, testified that Chandler and Rianna were the ones who stole from Wal-Mart.

## II. ANALYSIS

### A. Sufficiency of Evidence

The Defendant contends that the evidence offered at trial is insufficient to support the convictions for theft of property valued over $500 and contributing to the delinquency of a minor. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

### 1. Theft

A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. See Tenn. Code Ann. § 39-14-103. Theft of property is a Class E felony if the value of the property obtained is more than five hundred dollars ($500), but less than one thousand dollars ($1,000). See Tenn. Code Ann. § 39-14-105(2). The value of the property is its fair market value at the time and place of the offense. See Tenn. Code Ann. § 39-11-106(a)(36)(A)(i).

The Defendant argues that the evidence is insufficient to support her conviction of theft of property having a value of over $500, because there "is insufficient proof of the amount alleged stolen." The Defendant asserts that the only evidence presented to the jury regarding the value of the property stolen is the list of items compiled by Crowe. For the reasons set forth in detail in this opinion, we have concluded that the list of items and the value of $638.41 was admissible evidence. The jury determined that the value of the property stolen by the Defendant was over $500. This issue is without merit.

## 2. Contributing to the Delinquency of a Minor

Next, the Defendant argues that insufficient evidence was presented to convict her of contributing to the delinquency of a minor. Specifically, the Defendant contends that the only evidence to support this conviction is the testimony of Keisha Chandler, who was an accomplice in this offense.

A criminal defendant in Tennessee may not be convicted solely on the basis of an accomplice's testimony. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Rather,

> [t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Id. (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)).

We conclude that sufficient evidence was presented to corroborate the testimony of Keisha Chandler. Danny Crowe testified that he observed the Defendant, along with fifteen-year-old Keisha Chandler, steal items from Wal-Mart. Crowe also testified that he saw the Defendant remove price tags from two vests in Wal-Mart and give the vests to the juveniles. The juveniles then left the store without paying for the vests. An adult contributes to the delinquency of a minor when he or she participates with the child in unruly conduct. Tenn. Code Ann. § 37-1-156(a). The testimony of Crowe, which was obviously accredited by the jury, is sufficient evidence to support the Defendant's

conviction for contributing to the delinquency of a minor. This evidence sufficiently corroborates the testimony of Keisha Chandler.

## B. Hearsay Evidence

The Defendant argues that because Crowe's report constitutes inadmissible hearsay, Crowe's conclusion in the report that the stolen items had a value of $638.41 is also inadmissible hearsay. The State contends that although the list constitutes hearsay, it was properly admissible under Rule 803(6) of the Tennessee Rules of Evidence. The rules of evidence provide that "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. As the State points out in its brief, under Rule 803(6) of the Tennessee Rules of Evidence, a "data compilation" is admissible hearsay if it is made by a person with knowledge and a business duty to record the information. Tenn. R. Evid. 803(6). The statement must be written at or near the time the information was encountered, and it must occur as part of a "regularly conducted business activity." Id. This foundation must be laid by a "custodian or other qualified witness." Id.

In this case, we conclude that Danny Crowe compiled the list of items taken by the Defendant from Wal-Mart in the course of a regularly conducted business activity after the theft occurred. Crowe testified that he compiled the list himself after the Defendant was arrested. He testified that he obtained the items from the Defendant's vehicle and "rang them through my system to make sure they were mine before I charged her." Part of Crowe's job as a loss prevention associate was to walk through the Wal-Mart store dressed in plain clothes to look for shoplifters. It stands to reason that when Crowe apprehends a shoplifter with more than one stolen item, it is part of Crowe's regularly conducted business activity to record information pertaining to the stolen items, including listing the items and the value of the items. We conclude that the list was admissible under Rule 803(6) of the Tennessee Rules of Evidence and that the trial court did not abuse its discretion by admitting the list into evidence. The admission of evidence is a matter within the trial court's discretion, and a decision to admit or exclude evidence will not be disturbed on appeal absent a clear abuse of that discretion. State v. Carroll, 36 S.W.3d 854, 867 (Tenn. Crim. App. 1999).

## C.  Statement Against Interest by an Absent Witness

The Defendant asserts that the trial erred when it excluded from the jury her testimony that Christine Williamson confessed to stealing from Wal-Mart on December 31, 1999. The Defendant testified outside the jury's presence that she had talked to Christine Williamson and had asked Williamson to testify at trial that the Defendant did not steal anything. The Defendant understood Williamson's response to be an admission of her own involvement in stealing from Wal-Mart on the day of the incident in this case. However, the Defendant stated that Williamson refused to testify because she was already on probation for theft and feared the consequences of testifying about her involvement. The Defendant claimed that Williamson was afraid to testify because she was worried about getting caught for stealing items from Wal-Mart, and Williamson was also afraid that Wal-Mart had film showing Williamson stealing items from Wal-Mart. The Defendant's attorney subpoenaed a "Kristine Williamson" to testify at trial, but the subpoena had not been served as of

the trial date. The trial court excluded this testimony because it constituted inadmissible hearsay. The Defendant argues on appeal that Williamson was unavailable as a witness and that her statements to the Defendant were, therefore, admissible as statements against interest pursuant to Tennessee Rules of Evidence 804(b)(3).

Although a Defendant must be allowed to present evidence that another person committed the crime, that evidence must conform to the rules governing the admissibility of evidence. See State v. McAlister, 751 S.W.2d 436, 439 (Tenn. Crim. App. 1987). In order for the Defendant's testimony concerning Christine Williamson's alleged statements to have been admissible, the Defendant must first have shown that Williamson was unavailable as a witness. Tenn. R. Evid. 804. The Defendant argues on appeal that Williamson was unavailable because she was absent from the hearing, and the Defendant had been unable to procure Williamson's attendance by process. See Tenn. R. Evid. 804(a)(5). In addition, the Defendant must show that she made a good faith effort to locate Christine Williamson and secure her as a witness. See State v. Cureton, 38 S.W.3d 64, 79 (Tenn. Crim. App. 2000).

The record reflects that a subpoena was issued for Christine Williamson on December 6, 2000, but nothing in the record indicates whether the subpoena was served on Williamson. The trial began on January 23, 2001, and at that time, defense counsel indicated that Christine Williamson had not been located. We conclude that under these circumstances, the Defendant has not met her burden of showing that Williamson was unavailable. Therefore, the trial court was correct in excluding the self-serving hearsay testimony of the Defendant.

### D. Sentencing

Finally, the Defendant contends that the trial court erred in sentencing the Defendant by: (1) imposing the maximum sentence although mitigating circumstances were present; (2) ordering the Defendant to serve ninety days "day for day"; and (3) failing to impose immediate probation. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the

potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

### 1. Length of Sentence

After reviewing the record, we believe that the trial court followed the proper procedures for sentencing, considered the relevant facts and circumstances, and applied the appropriate sentencing principles. With regard to enhancement factors, the trial court found that the Defendant was a leader in the commission of an offense involving two or more criminal actors. See Tenn. Code Ann. § 40-35-114(2). The trial court found that there were at least two children who were acting under the Defendant's direction. The trial court placed great weight on this enhancement factor, stating, "I find then that that aggravating circumstance would in and of itself in this case under these facts justify the maximum sentence involved." We note that the involvement of a minor is an element of the offense of contributing to the delinquency of a minor, but is not an element of the offense of theft

of property. See id. §§ 37-1-156(a), 39-14-103. The trial court also applied Tennessee Code Annotated § 40-35-114(1), that the Defendant has a previous history of criminal behavior. In this regard, the trial court made reference to the involvement of the Defendant in a similar shoplifting incident on the previous night at a different Wal-Mart store.

As mitigating factors, the trial court applied Tennessee Code Annotated § 40-35-113(1), that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. The trial court also considered as a mitigating factor the Defendant's medical condition, based on the Defendant's testimony that she had been prescribed thirty-two prescription medications, of which she was taking six, and that she had "two nervous breakdowns back to back due to all of this." See Tenn. Code Ann. § 40-35-113(13) (providing for consideration as mitigation "[a]ny other factor consistent with the purposes of this chapter"). Even though mitigating factors were present, the trial court determined that the enhancing factors weighed more heavily and therefore imposed the maximum sentence. The weight to be given to enhancing and mitigating factors is within the discretion of the trial court. Shelton, 854 S.W.2d at 123. From our review, we conclude that there is no impropriety in the length of the sentences imposed by the trial court.

2. "Day for Day" Incarceration

Next, the Defendant questions the propriety of her "day for day" incarceration. The trial court ordered sentences of split confinement, with the Defendant to serve ninety days in jail, "day for day," and the balance to be served on supervised probation. "[A]ny trial court sentencing order that extends the term of confinement beyond that allowed by law relative to release eligibility and sentencing credits is improper." State v. James Kevin Underwood, No. E2000-01945-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 585, at *9 (Tenn. Crim. App., Knoxville, Aug. 2, 2001). In this case, the trial court imposed a two-year sentence of split confinement, see generally Tenn. Code Ann. § 40-35-306, of which ninety days was to be served "day for day" with the balance of the two years to be served on supervised probation. Had the trial court ordered the Defendant to serve a two-year sentence as a Range I standard offender, her release eligibility date would occur after service of 0.6 years, or seven months and six days, less sentence credits earned and retained by the Defendant. See Tenn. Code Ann. §§ 40-35-501(c) and 40-35-502(a)(2). Therefore, the sentence of confinement for ninety days, "day for day," would not cause the Defendant to be confined beyond her release eligibility date.

However, the Defendant also argues that the "day for day" confinement deprives her of "good conduct" sentence credits. See Tenn. Code Ann. § 41-2-111(b). We agree. In State v. Jeannie Hudson, No. E2001-00377-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 248 (Tenn. Crim. App., Knoxville, Feb. 19, 2002), our court stated as follows:

> In two recent cases, this Court has stated that a "defendant sentenced to the county jail for less than one year is entitled to earn good conduct credits." State v. Barnes, 2001 Tenn. Crim. App. LEXIS 936, at * 24, No. E2001-00325-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 10, 2001); see State v. Clark, 67 S.W.3d 73, 2001 Tenn. Crim. App. LEXIS 548, *10-12 (Tenn. Crim. App., at Nashville, 2001), app.

filed (Tenn. Sept. 13, 2001) (ordering driving under the influence sentence to be served in confinement at 100% cannot preclude applicable conduct credits). A trial court cannot deny a defendant this statutory right. Id.; see State v. Underwood, 2001 Tenn. Crim. App. LEXIS 585, at *8-9No. E2000-09-1945-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Aug. 2, 2001). Recent Tennessee Attorney General opinions have also expressed this view. See Op. Tenn. Att'y Gen. No. 00-051 (Mar. 20, 2000) (judgment cannot require county jail inmate to serve less than one year "day-for-day" so as to deprive inmate of good conduct credits); Op. Tenn. Att'y Gen. No. 96-061 (Apr. 4, 1996) (county jail inmate serving split confinement of six months followed by probation may earn good conduct credits or authorized work program credits toward the six months, but not both); Op. Tenn. Att'y Gen. No. 91-96 (Dec. 4, 1991) (felony inmate sentenced to split confinement of six months in county jail followed by two years of supervised probation may earn good conduct credits or authorized work credits toward the six months, but not both). We also note that this Court has cited Tennessee Attorney General Opinion No. 91-96 "for a discussion of proper sentencing credits to be applied toward jail time during split confinement." State v. Rigney, 1997 Tenn. Crim. App. LEXIS 388, No. 01C01-9605-CC-00212, Coffee County (Tenn. Crim. App. Apr. 24, 1997), app. denied (Tenn. Dec. 29, 1997).

Id. at **11-12.

As in Hudson, we conclude in this case that the application of good conduct credits, if any, that the Defendant may earn while serving the sentence of ninety days in the county jail shall operate to reduce the length of time that she is actually confined. We, therefore, modify the judgments of the trial court only to the extent that the "day for day" provision of the Defendant's sentences is deleted. We remand to the trial court for the entry of amended judgments deleting the "day for day" provision of the Defendant's sentences.

### 3. Probation

Finally, the Defendant argues that the trial court erred in failing to probate the Defendant's sentence. With certain exceptions, a defendant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a). "Although probation 'must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law.'" State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997) (citing Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts), *superceded by statute as stated in* State v. Steven A. Bush, No.01C01-9605-CC-00220, 1997 Tenn. Crim. App. LEXIS 592, at **16-17 (Tenn. Crim. App., Nashville, June 26, 1997). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169. An especially mitigated or standard offender convicted of a Class C,

D or E felony who does not fit within certain parameters[1] is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

However, we further note that even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Id. § 40-35-103(1)(A)-(C).

In this case, the trial court specifically found that the Defendant lacked remorse and continued to deny any involvement in the theft. It also found that she involved two teenage girls in a crime which she then tried to blame on them. The trial court further found that the Defendant might have even encouraged her son to perjure himself on the witness stand. The trial court stated that Mitchell's testimony was "incredible . . . not worthy of belief . . . and clearly rehearsed and staged." In light of these findings, we believe the trial court made a proper determination that a sentence of total probation should be denied.

Accordingly, the judgment of the trial court is AFFIRMED, as modified, and remanded for the entry of amended judgments deleting the "day for day" provision of the Defendant's sentences.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[1] Tennessee Code Annotated § 40-35-102(5) states that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . ."