# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. FRANK R. CLARK

**Appeal from the Circuit Court for Warren County**
**No. M-7843     Charles D. Haston, Sr., Judge**

---

### No. M2000-00862-CCA-R3-CD - Filed July 25, 2001

---

The defendant was convicted in a jury trial of driving under the influence (DUI), third offense, and of driving on a revoked license. In this appeal, the defendant contends (1) that the stop of his truck was an unreasonable seizure, (2) that the state failed to lay a proper foundation for admission of his breath test results, (3) that the breath test was invalid because it was given when he had tobacco in his mouth, and (4) that his DUI sentence to confinement to be served at one hundred percent is legally impermissible. We affirm the convictions, but we conclude that the defendant is entitled to good conduct credits. Because of discrepancies between the sentencing transcript and the judgments of conviction, we remand the case for review of the sentences and entry of corrected judgments, if necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Robert W. Newman and John P. Partin, McMinnville, Tennessee (on appeal), for the appellant, Frank R. Clark.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Clement Dale Potter, District Attorney General; and Thomas J. Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was originally charged and convicted of DUI, third offense; DUI by having over 0.10 percent blood alcohol; and driving on a revoked license. The trial court merged the two DUI convictions. The judgments of conviction reflect that the trial court sentenced the defendant for the driver's license offense to six months with all but forty-eight hours suspended and for the DUI third offense to eleven months, twenty-nine days at one hundred percent, with all but two

hundred eighteen days suspended. However, the DUI judgment also reflects that the defendant would be released from jail after one hundred twenty-two days and placed on strict house arrest for ten days, during which time he was to obtain admission to an in-house alcohol treatment program. Successful completion may mean probation for the remainder of the sentence, but failure to enter or complete the program shall result in the defendant serving the balance of his sentence. The sentences are to be served consecutively.

On February 8, 1999, at approximately 9:45 p.m., a McMinnville police officer saw the defendant in his Bronco sitting at a stoplight with no lit headlights. The light changed, the defendant turned left onto another street, and he turned on his lights. The officer stopped the defendant and determined that he was driving outside the time allowed in his restricted driver's license that was issued for work purposes after his regular license had been revoked. Based upon the odor of an intoxicating beverage, the defendant's admission to taking medication and drinking beer, and the defendant's physical actions at the scene, both the officer and his shift supervisor concluded that the defendant was under the influence.

McMinnville Police Officer Tom Jenkins, certified by the Tennessee Bureau of Investigation (TBI) to operate the Intoximeter EC-IR breath test machine, performed a breath test on the defendant, whose blood alcohol reading was 0.17 percent. Officer Jenkins acknowledged that he vaguely remembered the defendant, but he asserted that he had a standard routine that he followed in every case. He testified that he advised the defendant of the implied consent law and that the defendant signed the form. As to procedure, Officer Jenkins testified that he made sure that people had nothing in their mouth and advised them not to put anything in their mouth. He said he sat across from them and constantly observed them for twenty minutes, instructing them during the time how to blow into the breath machine. After twenty minutes, he typed the pertinent information into the machine and started the test. He said he used individually wrapped mouth pieces and told people to blow a long steady breath because the machine measures deep lung air.

Officer Jenkins testified that the defendant did not blow into the machine properly on three occasions, requiring the machine to be reset and the process to be started over. He ultimately obtained the 0.17 percent result. Officer Jenkins introduced a copy of a proper performance TBI certificate for the machine that was posted on the wall at the time of the defendant's test. The form reflects that the inspection and certification occurred on November 12, 1998. When asked if he knew that the defendant did not have tobacco in his mouth, Officer Jenkins asserted that he always looks in the mouth. He added that if a foreign matter were present, the machine would "blank out." He said that he did not know the standards and procedures that had been established by the forensic services division of the TBI concerning blood alcohol tests.

The defendant testified that he only had two beers with a sandwich that evening. He said that he was taking pain medication for a broken back. The defendant testified that he had chewing tobacco in his mouth during the breath test. He denied being under the influence.

# I. SEIZURE

The defendant asserts that the stop of his vehicle constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution. However, we may not consider this issue. The defendant was obligated to file a motion to suppress evidence on such a basis before the day of trial. See Tenn. R. Crim. P. 12(b)(3). Failure to do so constitutes a waiver of the issue. See Tenn. R. Crim. P. 12(f).

# II. ADMISSIBILITY OF BREATH TEST RESULTS

The defendant's next two issues relate to the breath test and test result admissibility requirements established in State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). Sensing provides that the testing officer must be able to testify:

> (1) that the tests were performed in accordance with the standards and operating procedures promulgated by the forensic services division of the Tennessee Bureau of Investigation,
>
> (2) that he was properly certified in accordance with those standards,
>
> (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed,
>
> (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate,
>
> (5) evidence that he followed the prescribed operational procedure,
>
> (6) identify the print-out record offered in evidence as the result of the test given to the person tested.

Id. at 416. These requirements must be proven by preponderance of the evidence. State v. Edison, 9 S.W.3d 75, 77 (Tenn. 1999).

The defendant has three complaints. The first relates to the fact that Officer Jenkins testified that he did not know the standards and procedures established by the TBI's forensic service division concerning scientific examination by analysis of breath or other bodily substances and that he had not "been trained in that." The defendant argues that Officer Jenkins did not satisfy the Sensing requirement. We view the evidence differently. Officer Jenkins testified that he followed the procedures for which he was trained to operate the machine which he used to test the defendant. The

TBI certified that he had been trained to operate the Intoximeter EC-IR as "required by Bureau policy to meet and maintain standards for the performance of law enforcement duties or required by law to be performed by or under the direction of the Bureau in the furtherance of law enforcement." The TBI also certified that testing showed that the machine used by Officer Jenkins had been found "to perform within the standards adopted in Section V of the Bureau's Standards for Scientific Instruments to Measure Breath Alcohol." We conclude that sufficient proof exists to show that the test was performed in accordance with the standards and operating procedure devised by the forensic services division of the TBI.

Second, the defendant notes that the TBI certificate for the machine was dated November 12, 1998, while the date of his test was February 9, 1999. He argues that no evidence reveals the machine was tested for accuracy, noting the time between the TBI's test and his breath test. He also asserts that Officer Jenkins failed to give any indication that the machine was working properly when his breath test was performed. In Sensing, the court reviewed and approved the procedures then being used by the TBI, which included testing each instrument every ninety days. Obviously, the facts in this case meet the ninety-day time frame. From the certificates and Officer Jenkins' testimony, we can only conclude that the instrument was working properly, there being no hint of evidence to the contrary.

Third, the defendant asserts that he had chewing tobacco in his mouth during the breath test. However, Officer Jenkins testified to the contrary, including asserting that foreign substances in the mouth would make the instrument "blank out." With this testimony, the fact that the state presented a print-out of the breath test result was evidence that chewing tobacco was not present. We do not believe that the evidence preponderates against the trial court's admission of the breath test results.

### III. SENTENCING

Finally, the defendant complains about his sentence. He asserts that the trial court sentenced him to "two hundred and twenty (220) days at one hundred percent (100%)." He contends that the sentence is impermissible because he is entitled to earn good conduct credits pursuant to Tenn. Code Ann. § 41-2-111. He relies upon an attorney general opinion that concludes that good conduct credits may be earned on DUI sentences of less than a year as long as they do not reduce the mandatory minimum sentence of incarceration required by law. See Op. Tenn. Att'y Gen. 98-237 (Dec. 28, 1998). The state responds that the attorney general opinion does not apply to the defendant's sentence of confinement. It argues that the sentence is eleven months, twenty-nine days, not two hundred twenty days, and notes that good conduct credits would not reduce confinement time below two hundred twenty days.

We view the state's position in this case to be directly contra to the attorney general's opinion. The opinion expressly recognizes that all DUI misdemeanor sentences are set by statute at the maximum, i.e., eleven months, twenty-nine days. In answering the question of whether DUI sentences are subject to good conduct credits under Tenn. Code Ann. § 41-2-111, the opinion concludes that such credits may be applied to whatever term of confinement is ordered, but they may

not reduce the mandatory minimum confinement required by law. Thus, the opinion necessarily reflects that good conduct credits apply to the term of confinement, regardless of the length of the sentence to be served on probation.

The attorney general has expressed this view in other opinions, as well. See Op. Tenn. Att'y Gen. No. 00-051 (Mar. 20, 2000) (judgment cannot require county jail inmate to serve less than one year "day-for-day" so as to deprive inmate of good conduct credits); Op. Tenn. Att'y Gen. No. 96-061 (Apr. 4, 1996) (county jail inmate serving split confinement of six months followed by probation may earn good conduct credits or authorized work program credits toward the six months, but not both); Op. Tenn. Att'y Gen. No. 91-96 (Dec. 4, 1991) (felony inmate sentenced to split confinement of six months in county jail followed by two years of supervised probation may earn good conduct credits or authorized work credits toward the six months, but not both). We also note that this court has cited Op. Tenn. Att'y Gen. No. 91-96 "for a discussion of proper sentencing credits to be applied toward jail time during split confinement." State v. Jeffery L. Rigney and Herman Eugene Hale, No. 01C01-9605-CC-00212, Coffee County (Tenn. Crim. App. Apr. 24, 1997), app. denied (Tenn. Dec. 29, 1997).

We agree that good conduct credits apply to misdemeanor DUI sentences. The DUI statute does not bar application of the good conduct credit statute regarding prisoners already sentenced. Cf. State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn. 1995) (noting that Tenn. Code Ann. § 55-10-403(m) expressly bars application of the Sentencing Reform Act of 1989 so as to conflict with existing DUI penalties). Thus, although the trial court was authorized to set the DUI sentence at one hundred percent, the defendant is entitled to good conduct sentence credits so long as they do not reduce his confinement below that required for the mandatory minimum DUI sentence, i.e., one hundred twenty days.

Finally, the state notes discrepancies between the sentencing hearing transcript and the judgments of conviction. The transcript reflects that the trial court ordered the defendant to serve two hundred twenty days of his DUI sentence, but allowed release from jail after one hundred twenty days for rehabilitative purposes. However, the judgment provides for two hundred eighteen days confinement with rehabilitative release from jail occurring after one hundred twenty-two days.

The transcript also reflects that the trial court ordered the defendant to serve forty-eight hours of his six-month revoked driver's license sentence concurrently with his confinement for the DUI but to serve the remaining suspended portion of the sentence consecutively to the DUI sentence. The judgment for the revoked driver's license offense provides that the sentence is to be served consecutively to the DUI sentence.

Normally, when conflicts exists between evidence transcripts and court minutes, the transcripts control. See State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). In this case, though, part of the trial court's sentencing decision reflected in the transcript was contrary to law. A trial court may not order confinement concurrently and probation consecutively from multiple sentences. See State v. Connors, 924 S.W.2d 362, 364 (Tenn. Crim. App. 1966). On the other hand,

the judgments reflect legally consecutive sentences. The problem, though, is that under the transcript, the defendant is to serve one hundred twenty days in confinement before release to house arrest, while under the judgments, the defendant shall be confined for one hundred twenty-four days. Given the fact that the judgments differ from the transcript, but the transcript reflects an improper sentence, we conclude that the case should be remanded to the trial court for determining the appropriate sentences and for correcting the judgments, if necessary.

The defendant's convictions are affirmed, but the case is remanded to the trial court for further proceedings in line with this opinion.

_____
JOSEPH M. TIPTON, JUDGE