# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 18, 2008 Session

## STATE OF TENNESSEE v. BENJAMIN MONROE

### Appeal from the Circuit Court for Wilson County
### No. 06-1066   John D. Wootten, Jr., Judge

---

### No. M2007-02196-CCA-R3-CD - Filed January 7, 2009

---

Appellant pled guilty in the Wilson County Criminal Court to one count of vehicular homicide, one count of vehicular assault, and one count of leaving the scene of the accident.  In exchange for the guilty pleas, Appellant received sentences of three years, two years, and one year, respectively.  The trial court held a sentencing hearing to determine the manner of service of the sentence.  The trial court ordered Appellant to serve eight months of the sentence day-for-day, followed by ten years of probation.  Appellant seeks review of the sentence on appeal.  We determine that the trial court erroneously deprived Appellant of good conduct credits by ordering him to serve eight months of the sentence day-for-day.  Consequently, we reverse that portion of the sentence and remand to the trial court for entry of an order deleting the requirement that the sentence be served day-for-day. The remainder of the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed in Part, Affirmed in Part and Remanded.

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT W. WEDEMEYER, JJ., joined.

G. Frank Lannom and Melanie R. Bean, Lebanon, Tennessee, for the appellant Benjamin D. Monroe.

Robert E. Cooper, Jr., Attorney General and Reporter; PrestonShipp, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General, and Laura Bush, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 29, 2006, Appellant was the driver of a vehicle containing three passengers, Cortez D. Foster, Roger D. Maddalina, and Jeremy T. Donelson.  Appellant was arrested late that night

after a single vehicle accident on Curd Road in Mt. Juliet left one of the passengers dead and the other two passengers injured. At the time of the accident, Appellant was enlisted as a member of the United States Army on full-time active duty. He was involved in Ranger training and was on a two-week pre-deployment leave in anticipation of deployment to Iraq.

In November of 2006, Appellant was indicted by the Wilson County Grand Jury for one count of vehicular homicide by intoxication, one count of vehicular homicide by recklessness, two counts of vehicular assault, and one count of leaving the scene of an accident.

In June of 2007, Appellant pled guilty to vehicular homicide by recklessness in exchange for a three-year sentence. Appellant also pled guilty to vehicular assault in exchange for a two-year sentence. Finally, Appellant entered a best interest plea to leaving the scene of an accident in exchange for a one-year sentence. The manner of service of the sentence was to be determined at a later date by the trial court.

At the plea acceptance hearing, the following facts were recited by the prosecutor:

[Appellant] and a gentleman by the name of Roger Maddalina, . . . and eventually Cortez Foster and Jeremy Donelson, both minors, wound up with them proceeding to go to [Appellant's] house at which time there was an auto accident which resulted in the death of Mr. Foster and severe injury to Mr. Donaldson [sic]. He suffered a head injury, in a coma for 30 days down at Vanderbilt, went from there to a rehabilitation place, and those injuries were extensive.

. . . . Mr. Maddalina gave a statement in which he indicated that there had been a shot and a half of Yeager [sic] drank by the defendant prior to the incident.

This defendant was interviewed at which time he stated that there had been four beers - he had had four beers prior to the incident. He was not located at the scene, Judge, this defendant. He left the scene and was not located until some three hours and forty-five minutes later. He walked back to the scene at this time and he was interviewed, a blood test taken five hours later, which was .05.

. . . .[T]he bottom line is that the State feels like in discussing [the vehicular homicide by intoxication charge] with the family, this is a fair settlement of those facts. The alcohol part could go.

The reason for the best interest plea, this particular defendant - as I indicated, Mr. Maddalina, who was the passenger in the vehicle, he goes to a house to seek help. This defendant comes to that house, and they're out there on the porch and this defendant leaves and we don't see him for some - again, until three hours and forty-five minutes later.

The discussion between Counsel, Judge, is that he is going to claim that he had a concussion at this time. Obviously, the State would contend that he didn't, and what we have agreed to is that this is a best interest plea, but that the plea as to recklessness based on the speed of the vehicle, those are straight up pleas and the vehicular assault, that is a straight up plea, and that would be the facts that the State would put forward.

The trial court held a sentencing hearing at a later date. At the sentencing hearing, the trial court heard testimony from several witnesses.

Avana Sisco, who was responsible for preparing Appellant's presentence report, explained to the trial court that Appellant had a "very good home environment" that would support the conditions of a sentence that involved release into the community.

One of the officers for the Lebanon Police Department, Kenneth Dewayne Smith, testified at the sentencing hearing. He responded to the accident when Appellant returned to the scene. Officer Smith reported that Appellant had the odor of alcohol about his person and that his eyes were red and bloodshot. Officer Smith also stated that Appellant was slurring his words. About three months prior to the sentencing hearing, Officer Smith had seen Appellant drinking alcohol, even though he was underage at the time.

Tabitha Foster, the mother of the deceased victim, testified at the hearing. She explained to the trial court that her son's death had affected everyone in her family both mentally and emotionally. Mrs. Foster and her daughter were still receiving counseling at the time of the hearing. Cortez Foster's grandmother, Shirley Foster, also testified. She stated that the loss of her grandson was "awful" and "overwhelming." Mrs. Foster described Appellant as a coward for leaving the scene of the accident and was disappointed in Appellant for drinking and driving.

Jadonna Simpson, the mother of victim Jeremy Donelson, testified that prior to the accident, her son loved playing sports and being with people. After the accident in which he suffered a broken femur, broken ankle, broken wrist, facial fractures, a broken clavicle, spinal fractures, and a brain injury, Mr. Donelson is unable to do many of the things that he used to love.

As a result of the accident, Mr. Donelson was in a coma for several weeks. When he awoke from the coma, Mr. Donelson had to relearn how to walk, talk, and eat. At the time of the sentencing hearing, Mr. Donelson was still wearing a leg brace and attending speech therapy.

Dr. Richard Fishbein testified for Appellant. He reviewed Appellant's medical records to ascertain the nature of the injuries Appellant received in the crash. Dr. Fishbein opined that Appellant received a closed head injury from the accident. Appellant's actions after the accident and the statements that he made to authorities were consistent with a concussion.

Appellant had several character witnesses testify at the sentencing hearing. Officer Mark Pack of the Nashville Police Department testified that he had known Appellant for five and a half years. During that time, Officer Pack and Appellant had, among other things, gone fishing together. According to Officer Pack, Appellant was remorseful and capable of abiding the law.

Rick White, Appellant's employer, testified that he had known Appellant for five or six years. Mr. White owns a landscaping company and described Appellant as having a good work ethic. Appellant and Mr. White also attended church together. Mr. White had offered Appellant a room in his home should Appellant be released into the community. Mr. White felt that Appellant's support system would allow him to comply with the conditions of a sentence involving release into the community.

Appellant's next-door neighbor, Richard Roberts, also testified that he had known Appellant for five or six years. Mr. Roberts described Appellant as emotionally withdrawn after the accident.

Appellant's mother, Jodi Bubel, testified that on the evening of the accident, Appellant was at her home at around 9:00 p.m. He was accompanied by his friends R.J, Darrius, and Darrius's girlfriend Amanda. Appellant and R.J. put oil into Ms. Bubel's car and then the group left. At that time, around 9:45 p.m., there was no indication that any of them were drinking. At around 12:30 a.m., Ms. Bubel received a telephone call from Appellant in which he asked if he and his friends could use her computer. She told them that they could use the computer. According to Ms. Bubel, there was no indication that Appellant was impaired at that time. Appellant never arrived. Soon thereafter, police arrived at her home and informed her about the accident. Ms. Bubel next saw Appellant at the hospital.

Ms. Bubel informed the trial court that as a result of the felony conviction, Appellant was discharged from the military and was ineligible to re-enlist. Appellant was withdrawn after the accident but had started to become more social. Ms. Bubel agreed that she would facilitate Appellant's sentence if it involved release into the community.

According to the presentence report the Appellant gave a statement to the police, on the evening of the accident. Appellant said that the and Mr. Maddalina went to Lebanon after work to meet a man named "Josh" who purchased alcohol for them. Appellant did not remember being involved in the accident. He admitted that he drank alcohol but had no idea how much alcohol he consumed. Appellant's first memory after the crash was awakening in a ditch near the accident.

After the accident, Appellant attended the victim's funeral. Appellant explained to the probation officer that he knew that "Cortez was killed and Jeremy was badly hurt. [He] also [knew] that [he] was driving and the wreck was [his] fault." Appellant apologized for the accident and stated that he thought about his friends "every day."

At the conclusion of the sentencing hearing, the trial court made the following findings of fact and conclusions of law:

-4-

All right. I said at the outset of this hearing that anytime there is a death involved and also very, very serious bodily injury that sometimes emotions can overwhelm participants in this hearing or any hearing and that is the case as it relates to both sides. Nothing this Court does can bring back the life of a young man. There's nothing that I can do, but I have to look at those sentencing considerations, and I do not think that I can, in any sense, grant this defendant probation in the fullest sense of the word. I think that that would depreciate the seriousness of the facts of this case and what I've heard today.

Now, based upon what the State has told me, and also given the factors that I have to consider under our law . . . I do not think that I can run these sentences consecutive. . . .

So I think that I'm stuck, this Court is stuck with a three year sentence in terms of I've got a two year and a one year and I think they just have to run concurrent, I do believe that.

. . . .

I've already said that to place this defendant on complete probation, I think, would depreciate the seriousness of this offense, therefore, I'm going to sentence him to serve eight months, day for day, in jail, but under the law of this state, I can extend the probation out a considerable period of time.

Obviously, I'm capped at the amount of time that he would have to serve in a jail setting or in a penetetiary [sic] setting or however you want to couch it for three years, but I can impose a probated sentence in excess of the three years. I can run it out all the way to 15 years, so what I'm going to do is I'm going to sentence him to basically a three year sentence, to serve eight months, day for day, split confinements, and then I'm going to place him on probation for 10 years, 10 years.

. . . .

I think that is the right decision and the just decision. It doesn't bring back this young man or it doesn't cure the young man that was seriously injured, and I'm sure that it saddens to a great sense the friends and family of the defendant, because I do believe that these young men, young boys, young men were all friends, but you have to pay for the consequences of your actions, young man, . . . .

Appellant filed a timely notice of appeal.

*Analysis*

-5-

On appeal, Appellant argues that the ten-year length of probation was "unjustified and excessive" and not in compliance with Tennessee Code Annotated section 40-35-103(4), which establishes as a sentencing principle that "the sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.". Further, Appellant argues that the trial court improperly ordered him to serve eight months of the sentence day-for-day. The State contends that the trial court's decision to sentence Appellant to serve ten years on probation was proper and should be affirmed. However, the State concedes that the trial court's decision to order Appellant to serve eight months of the sentence day-for-day was error.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[1]

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing

---

[1] In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended Tennessee Code Annotated section 40-35-210. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006). The amendment became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendant who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. Appellant herein committed the offenses in June of 2006. Therefore, the amendment to Tennessee Code Annotated section 40-35-210 applies to Appellant. Specifically, the amendment made the sentencing guidelines "advisory" in nature. T.C.A. 40-35-210(c).

criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration. . . .

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." T.C.A. § 40-35-102(6); *see also State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). Furthermore, with regard to probation, a defendant whose sentence is ten years or less is eligible for probation. T.C.A. § 40-35-303(a).

However, all offenders who meet the criteria for alternative sentencing are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

T.C.A. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "[t]he potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part thereof and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

T.C.A. § 40-35-303(c)(1).

Appellant herein pled guilty to vehicular homicide, a Class C felony, vehicular assault, a Class D felony, and leaving the scene of an accident involving death, a Class E felony. *See* T.C.A. § § 39-13-213(b)(1); 39-13-106(b); 55-10-101(b)(2). In exchange for his guilty pleas, Appellant received sentences of three years, two years, and one year, respectively. The sentencing range for a Range I offender for a Class C felony is three to six years, and the maximum sentence in the class is fifteen years. T.C.A. §§ 40-35-111(b)(3); 40-35-112(a)(3).

Trial courts are given wide latitude when setting probation and the trial court herein was clearly concerned with the level of supervision that Appellant required. The trial court also wanted to avoid depreciating the seriousness of the offense, especially where there was a loss of one life and serious permanent injuries to another as a result of Appellant's actions. The record supports the proposition that the relatively light incarceration portion of the sentence coupled with an extended probationary period is the least severe measure to effect the purpose of the sentence. Appellant's probationary sentence of ten years is affirmed.

Next, we note that Appellant and the State correctly point out that the trial court improperly ordered Appellant to serve eight months of his sentence day-for-day. A defendant who is sentenced to a county jail for less than one year is entitled to earn good conduct credits, and a trial court may not deny a defendant this statutory right. *See* T.C.A. § 41-2-111(b); *State v. Clark*, 67 S.W.3d 73, 78 (Tenn. Crim. App. 2001). It is well-settled that:

> [w]here a period of confinement is imposed, an order of day-for-day service is impermissible because a trial court cannot deny a defendant the statutory right to earn good conduct credits or authorized work credits where the defendant receives a sentence of split confinement and becomes a county jail inmate.

*State v. Tim Mattingly*, No. M2002-02765-CCA-R3-CD, 2003 WL 22038777, at *3 (Tenn. Crim. App., at Nashville, Sept. 2, 2003). *See also State v. Alberto Camacho*, No. E2005-02699-CCA-R3-CD, 2007 WL 3145003, at *15 (Tenn. Crim. App., at Knoxville, Oct. 29, 2007); *State v. Chris E. Hixon*, No. M2002-03141-CCA-R3-CD, 2004 WL 741670, at *2 (Tenn. Crim. App., at Nashville, Apr. 7, 2004). Because the trial court erred with respect to the day-for-day sentence service, we reverse the judgment of the trial court as to sentencing and remand for entry of a judgment deleting the day-for-day service requirement.

*Conclusion*

For the foregoing reasons, the judgment of the trial court in regard to the day-for-day service of eight months of Appellant's sentence is reversed and remanded for entry of a judgment deleting the day-for-day service requirement. In all other respects, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE