# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
## Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. MICHAEL L. SNODGRASS

### Appeal from the Criminal Court for Sullivan County
### No. S56939    R. Jerry Beck, Judge

_____

### No. E2011-02637-CCA-R3-CD - Filed March 1, 2013

_____

The Defendant, Michael L. Snodgrass, appeals the Sullivan County Criminal Court's order revoking his judicial diversion for a charge of theft of property valued at less than $500 and imposing a split confinement sentence of eleven months and twenty-nine days, with ten days to be served in jail.  On appeal, he contends that the court erred in sentencing him to split confinement and imposing a requirement that he serve 75% of his sentence before eligibility for work release, furlough, trusty status and related rehabilitative programs.  We affirm the denial of full probation but reverse the judgment and remand for entry of a judgment that deletes the special condition that the Defendant to serve ten days "flat" and specifies the percentage of his sentence he must serve before eligibility for rehabilitation programs.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant Public Defender, for the appellant, Michael L. Snodgrass.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant pleaded guilty to theft for shoplifting two bottles of nasal spray from Walmart. On April 20, 2010, the trial court granted his request for judicial diversion and placed him on probation for eleven months and twenty-nine days. On February 8, 2011, a violation warrant issued alleging that he violated a condition of probation by committing another offense in Virginia in December 2010. A second violation warrant issued on July 20, 2011, alleging that he committed two offenses in Virginia, failed to report his arrest, failed to report to his probation officer, and failed to inform his probation officer of his change of residence.

A review of the evidence presented at the diversion hearing is relevant to provide background information for the revocation proceedings that took place later. At the diversion hearing, the trial court received the presentence report, which reflects that the then-forty-two-year-old Defendant had no prior criminal convictions. The presentence report did not list the Defendant's employment, education, family, health, military, or financial history "due to lack of cooperation by the Defendant." The Tennessee Bureau of Investigation's certificate of eligibility for judicial diversion was received as an exhibit.

The Defendant testified that he attempted to contact the probation office regarding the presentence report. He said he returned a telephone call from Tammi Smith, who told him that she had all the information she needed. He said Ms. Smith told him that she would contact him if the trial court needed additional information. He said he never heard from her again, although he received the presentence report in the mail, which stated that he had not cooperated in its preparation.

The Defendant testified that he was a high school graduate with some college education. He said he had several herniated disks, torn rotators on both shoulders, nerve damage to his left leg, and arthritis. He had applied for disability benefits. He said he lived with his parents, wife, and two children in Big Stone Gap, Virginia. He said he had no income but that his father had a railroad pension. He said he previously owned a dry cleaning business that his father now owned. He had worked as a correctional officer at a state prison in Virginia and in construction. He had no military service.

On cross-examination, the Defendant testified that the telephone conversation with Ms. Smith was a couple of months earlier. He said that he only received one message to call her and that he did not recall receiving a letter from her instructing him to report to the probation office. On redirect examination, the Defendant said he received the presentence report before he received the message to call Ms. Smith. He said his telephone number listed on the presentence report was a business number that was disconnected. On recross-

examination, he acknowledged that he did not cooperate with the WalMart loss prevention officers but said they assaulted him. He did not know why he would have given the disconnected telephone number unless it was out of habit.

The trial court granted judicial diversion. The court allowed the Defendant to have his probation supervision transferred to Virginia. After the two violation warrants issued, the trial court held a hearing on the probation violation allegations.

At the revocation hearing, Big Stone Gap Police Detective William Hollinger testified that he grew up with the Defendant. He investigated the Defendant and the Defendant's wife for utilities theft at a house on Chandler Mountain Road. He said he went to the residence and confiscated a pipe leading from the house's water connection to the town's water connection. He said pipe was confiscated four times. He determined that the Defendant and the Defendant's father lived at the house with the Defendant's wife. He said that each time he went to the home, the Defendant was there. He said the Defendant knew the pipe was illegal because he told the Defendant it was. He said the Defendant professed to have no knowledge of how the pipe got there. The Defendant was charged with a crime for two of the four occasions. He said that the Defendant was convicted in district court and appealed to circuit court but that the commonwealth's attorney dismissed the case when witnesses did not appear for court.

On cross-examination, Detective Hollinger testified that he went to the house three times and that another detective went once. He said that the first time he went, the Defendant pulled up in a truck and that the second time, the Defendant met him in the driveway. He said the Defendant's son was present once. He said the Defendant may have said the neighbors installed the pipe in order to have the Defendant evicted. He said that no one established service with the utility company for the house in the six months the Defendant lived there.

On redirect examination, Detective Hollinger testified that the pipe and meter were 100 yards or less from the house and that the pipe was visible from the house. He said the pipe leaked enough that it would be visible. He said that other residents called with complaints about the leaking water. He said one neighbor claimed to have seen the Defendant by the pipe but did not see the Defendant install the pipe.

Probation Officer Tammy Wood testified that the Defendant missed appointments on January 10, 2011, and February 15, 2011. She said he appeared for appointments on December 20, 2010, and January 25, 2011. She said the Defendant called her around February 20 to 25 after missing the February 10 appointment to report that "[h]e had a lot of stuff going on." She said that although she tried to contact the Defendant after that date, she

never heard from him. She said the Defendant notified her of a new criminal charge, and a violation warrant was prepared. She said she concluded that the Defendant was not reporting to the probation office because he knew he had a new charge.

Officer Wood testified that she listed an address on Egan Road in the first violation warrant and an address on Chandler Mountain Road in the second violation warrant. She said the Defendant was served with the second warrant and taken into custody in court, not at home. She said that after the Defendant was taken into custody, he reported on October 12, 2011, and November 9, 2011. She said that the Defendant had not paid his probation fees but that he claimed to have "filed something" to have the fees waived. She said the Defendant moved without permission and did not advise her of the change. She said the Defendant reported Egan Road as his address when he reported in October and November 2011. She said she was unaware that the Defendant moved to Chandler Mountain Road until he called her when he realized there was an outstanding violation warrant. She said that when the Defendant reported, he minimized any wrongdoing or violations of probation rules.

Officer Wood testified that she learned that the Defendant had two arrests in Virginia. The first was for property damage regarding shrubbery. She said that when she checked online for the status of this charge, she discovered a second arrest for meter tampering. She said the Defendant never told her about the meter tampering arrest. She said she discovered the meter tampering charge in July 2011 and had not heard from the Defendant since February 2011.

On cross-examination, Officer Wood testified that the Defendant told her about the charge related to the shrubbery but not within seventy-two hours. She thought the charge related to the shrubbery was dismissed. She said that the Defendant was found guilty of the meter tampering charge but that the case was appealed and the charge dismissed. She said she did not go to either of the addresses on Egan Road or Chandler Mountain Road because they were out of the jurisdiction. She said she based the change of residence allegation on the allegations in the meter tampering case. She said the Defendant was supposed to report to the probation office once a month.

On redirect examination, Officer Wood testified that the Defendant called her in a panic in July 2011 because he learned through a pawn shop that he had an outstanding warrant in Tennessee, which was the first violation warrant. She agreed the call in July was "not just a courtesy call" and said it was because the Defendant was scared.

The Defendant's son testified that his father lived with his grandparents. He said that he, his mother, and his sister lived on rented property on Chandler Mountain Road. He said that his parents had "problems" and that his father visited but did not live there. He was

-4-

unaware of his father having any involvement in running a water pipe from a meter to the house.

On cross-examination, the Defendant's son denied that he was responsible for the water pipe. He said the property owner, Lisa Mona Chandler, told him the water came from a spring. He said he was unaware of having a criminal record. He said that he was charged with assault, that the charge was dismissed, and that this was the only time he was ever arrested. He said that his father lived on Egan Road and that he had given two street numbers for Egan Road because the addresses were changed, although it was the same house. He thought the State was the entity that changed the street numbers.

The Defendant testified that he lived on Egan Road. He said the house had been there for many years but that the address had changed. He said the house belonged to his parents, who also lived there. He said he had never lived on Chandler Mountain Road but that his wife, daughter, and son lived on Chandler Mountain Road. He said he never placed a pipe from a water meter to the house on Chandler Mountain Road. When asked why he had not had any contact with Ms. Wood after February 25, 2011, he said that he was under the impression he could report by phone. He said he was disabled and did not have a car. He received disability benefits for several physical injuries and conditions. He estimated he tried to call Ms. Wood ten times in February and said he left multiple messages for her. He said he tried to call her in March and April. He said he showed Ms. Wood the paperwork for the charge related to damaging shrubbery at a scheduled appointment. He said he was unaware of the requirement that he report any arrests within seventy-two hours.

On cross-examination, the Defendant testified that he was unaware of any pending charges against him. He said he was "100%" certain that Ms. Wood told him he could report by telephone. He acknowledged a document from the Social Security Administration addressed to him at 5129 Chandler Road, Big Stone Gap, Virginia regarding his disability benefits. The letter, which was dated August 29, 2011, was received as an exhibit. He said the letter had the address because he gave his check to his wife and children.

With respect to the shrubbery damage charge, he said his son was driving a truck that was registered to the Defendant and ran over a bush. He said that an officer questioned his son and that his son denied running over the bush. He said an officer brought him a warrant and told him to go to court on the date specified. He said the charge was dismissed. He said he showed the warrant to Ms. Wood but did not know if he did so within seventy-two hours. He said that he explained the situation to her but that she filed the first revocation warrant anyway.

The State called Ms. Wood as a rebuttal witness. She testified that she never permitted the Defendant to report by telephone. On cross-examination, she said there was a telephone reporting program for which the Defendant was eligible in the future but that he never returned to the probation office after his intake appointment on January 25, 2011. She told the Defendant about the telephone reporting program and that he might be eligible for it.

The trial court found that the Defendant was equivocal in his testimony and that Ms. Woods's testimony was credible. The court found that the State did not prove by a preponderance of the evidence that the Defendant violated the law or that he moved without notifying his probation officer. The court found, however, that the Defendant failed to report his new charges within seventy-two hours and that he absconded from probation. The court revoked judicial diversion. It ordered that the Defendant serve a split confinement sentence of ten days in jail and the rest of his eleven month, twenty-nine day sentence on probation. The court specified that the Defendant must serve "ten days flat."

On appeal, the Defendant contends that the trial court erred in sentencing the Defendant to a split confinement sentence of eleven months and twenty-nine days, ten of which were to be served in jail, and in imposing a seventy-five percent service requirement before eligibility for sentence credits. The State contends that the trial court did not err. We agree with the State.

When a Defendant's judicial diversion is revoked, the trial court must conduct a sentencing hearing. State v. Judkins, 185 S.W.3d 422, 426 (Tenn. Crim. App. 2005) (interpreting T.C.A. § 40-35-313(a)(2), which provides that upon revocation of diversion, "the court may enter an adjudication of guilt and proceed as otherwise provided"). When imposing a misdemeanor sentence, however, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. T.C.A. § 40-35-302(a) (2010) (amended 2011). We note that the law provides no presumptive minimum for misdemeanor sentencing. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). However, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d); see Troutman, 979 S.W.2d at 274 ("[W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.").

Tennessee Code Annotated section 40-35-401(d) (2010) states that appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Our Tennessee Supreme Court recently interpreted the statute to mean in the context of felony sentencing that length of sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). More recently, our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." State v. Christine Caudle, — S.W.3d —, —, No. M2010-01172-SC-R11-CD, slip op. at 7 (Tenn. Nov. 27, 2012). This approach is consistent with the statute, which provides that all sentencing questions under Code section 40-35-401(a) are subject to the same standard for review. Although our supreme court has not addressed whether the abuse of discretion standard with a presumption of correctness applies to misdemeanor sentencing, the court has previously cited Code section 40-35-401(d) regarding the standard of review of misdemeanor sentencing. See State v. Cooper, 336 S.W.3d 522, 525 n.4 (Tenn. 2011). As a result, we conclude that the abuse of discretion standard with a presumption of reasonableness now applies to misdemeanor sentencing. As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is on the appealing party to show that the sentence is improper.

## I - Length and Manner of Service of the Sentence

The Defendant argues that a sentence of less than eleven months and twenty-nine days is appropriate. He also argues that the trial court erred in imposing ten days' incarceration. As we have noted, misdemeanor sentences do not have a presumptive minimum. Creasy, 885 S.W.2d at 832. For the Defendant's Class A misdemeanor, the permissible sentence is up to eleven months and twenty-nine days. See T.C.A. § 40-35-111(e)(1) (2010).

While a court automatically considers a defendant for probation, the defendant has the burden of establishing that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts. "[T]he defendant is not automatically entitled to probation as a matter of law." State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991) (quoting T.C.A. § 40-35-303(b), Sentencing Comm'n Cmts.). When determining if confinement is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited

to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010).

Although the court did not make specific findings regarding its determination of the sentence length and manner of service, it was not required to do so. See Troutman, 979 S.W.2d at 274. The record reflects that after receiving the proof, the court made factual findings regarding the Defendant's credibility as compared with that of Ms. Wood. The Defendant's lack of candor with the court speaks poorly of his potential for rehabilitation. See, e.g., State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); State v. Nunley, 22 S.W.2d 282, 289 (Tenn. Crim. App. 1999). His potential for rehabilitation was relevant to the court's determination of the length and the manner of service of the sentence. See T.C.A. § 40-35-103(5) (2010). Before ruling on the diversion revocation, the court made findings regarding multiple failures to comply with the terms of probation. As the State notes in its brief, the Defendant exhibited increasing disregard for the rules of probation. He failed to report his first criminal charge within seventy-two hours, and he never reported the second. He failed to report as scheduled to his probation officer and eventually quit reporting altogether. The Defendant's failure to comply with the terms of his recent probation was relevant, as well. See id. § 40-35-103(1)(C). Although the Defendant notes his compliance with probation after he was arrested on the violation warrant, the trial court was entitled to consider the countervailing proof of his earlier disregard for the terms of probation. The Defendant has not shown that the trial court erred in determining that he should receive a sentence of eleven months and twenty-nine days and did not demonstrate his suitability for full probation. The Defendant is not entitled to relief on this basis.

## II - Percentage of Service

The Defendant contends that because the trial court did not specify at the sentencing hearing that the Defendant must serve 75% of his sentence before eligibility for work release, furlough, trusty status and related rehabilitative programs, the percentage must be zero. The State contends that the special instructions portion of the judgment properly specifies the court's intent that the Defendant serve ten days without any diminution for sentence credits before being released on probation and that modification of the judgment will "sow confusion about the intent of the trial court."

The trial court must impose a specific sentence in terms of the months, days, or hours to be served. T.C.A. § 40-35-302(b) (2012). Then, the trial court must set the percentage of the sentence that the defendant is to serve in incarceration before being considered for various rehabilitative programs. Id. § -302(d). The percentage shall not be more than 75%. Id. This percentage has no relation to statutory sentence reduction credits an inmate receives. See id. § -302(b) (stating that the defendant shall be responsible for serving the percentage of the sentence designated by the trial judge "undiminished by sentence credits of any sort except for credits authorized by [various statutes providing for certain sentence credits]"). Whether an inmate is allowed to participate in rehabilitative programs after serving the specified percentage is within the discretion of the executive agency, in this case the sheriff, housing the inmate. Id. § -302(d); see State v. Smith, 909 S.W.2d 471, 474 (Tenn. Crim. App. 1995) (stating that the trial court may not place conditions on the manner in which a defendant serves a jail sentence).

The transcript reflects the trial court's ruling that the Defendant serve "ten days flat," a condition also stated in the special conditions portion of the judgment. The "flat" condition is contrary the Defendant's statutory right to accrue sentence reduction credits. The trial court may not circumvent a defendant's accruing statutory sentence credits. State v. Clark, 67 S.W.3d 73, 78 (Tenn. Crim. App. 2001). The "ten days flat" special condition was not proper.

Returning to the separate question of the percentage of the sentence to be served before eligibility for rehabilitative programs, the Defendant cites Tennessee Code Annotated section 40-35-302(d) for the proposition that the statute mandates 0% where, as here, the court failed to specify at the sentencing hearing that he must serve 75% of the sentence before eligibility for rehabilitative programs. Section 40-35-302(d) provides, however, "If no percentage is expressed in the judgment, the percentage shall be considered zero percent (0%)." T.C.A. § 40-35-302(d) (emphasis added). Although the judgment of conviction includes a percentage to be served before eligibility for rehabilitative programs, the trial court did not mention the percentage at the sentencing hearing.

This court has said that when there is a conflict between the transcript and the judgment, the transcript controls. See, e.g., State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985); cf. State v. Clark, 67 S.W.3d 73, 79 (Tenn. Crim. App. 2001) (stating that when the transcript and the court minutes conflict, the transcript controls). However, "[w]hen this court has been faced with a transcript of the sentencing hearing clearly indicating the trial court's intention that the defendant's percentage is not zero percent, . . . we have deferred to the trial court's express pronouncement as reflected in the transcript." State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999).

Because the transcript does not reflect that the court addressed the percentage of service before eligibility for rehabilitative programs, these rules are not determinative. The court's failure to address the percentage at the hearing and inclusion of a percentage other than 0% in the judgment creates a conflict regarding the percentage of the sentence that the Defendant shall serve before eligibility for rehabilitative programs, and this court is unable to resolve the conflict on the record before us. We remand the case for the trial court to address the percentage of the sentence to be served and specify it in the judgment.

In consideration of the foregoing and the record as a whole, the denial of full probation is affirmed, but the judgment is reversed, and the case is remanded for entry of a judgment that omits the ten days "flat" special condition and for the court to address the percentage to be served before eligibility for rehabilitative programs and specify it in the judgment.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE