# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 2, 2009 Session

## STATE OF TENNESSEE v. PAMELA MICHELLE HUBANKS

**Direct Appeal from the Circuit Court for Madison County**
**No. 08-229     Donald H. Allen, Judge**

**No. W2008-02379-CCA-R3-CD  - Filed January 26, 2010**

The Defendant-Appellant, Pamela Michelle Hubanks, was convicted by the Madison County Circuit Court of one count of theft of property valued at $500 or less, a Class A misdemeanor, and sentenced to eleven months and twenty-nine days, with 180 days of confinement to be served day-for-day in the county jail and the balance to be served on supervised probation.  On appeal, Hubanks argues: (1) the evidence was insufficient to support her conviction; (2) the trial court erred in ordering her to serve 180 days in confinement, erred in ordering her to serve her 180 days of confinement day-for-day, and erred in denying full probation.  Upon review, we affirm the trial court's judgment but remand for entry of a corrected judgment to remove the day-for-day provision from the 180 days of confinement and to insert a service percentage of 75 percent.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded for Entry of a Corrected Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, and Ryan Feeney, Selmer, Tennessee, for the Defendant-Appellant, Pamela Michelle Hubanks.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.**  David Barnett, the loss prevention officer for Sears in Madison County, Tennessee, testified that he saw Hubanks take a pair of gloves and a scarf over the store's surveillance system on January 4, 2008 .  He observed Hubanks place the scarf around her

neck and tuck it into her coat and hold the gloves in her hand. After putting these items on her person, Hubanks walked past the cash registers and exited the store. Store personnel stopped Hubanks outside the store and brought her back inside. Although Hubanks first denied stealing the merchandise, she later gave a written statement admitting to the theft of the scarf and gloves. Barnett stated that employees in the loss prevention department did not promise her anything in exchange for her written admission and did not try to coerce, trick, or use force against her to get her to sign the written admission. The stolen items were valued at approximately $48.00. Barnett stated that the price tag had been removed from the gloves and was later found in Hubanks' coat pocket. He was unsure whether the price tag had been removed from the scarf. The videotape of the theft was shown to the jury. Barnett said that after the merchandise was recovered and Hubanks' written admission was obtained, law enforcement was notified.

Dennis Ballentine, an officer with the Jackson Police Department, testified that he arrested Hubanks after dispatch told him that Sears had a shoplifter in custody. He stated that he did not personally interrogate her regarding the theft because the loss prevention department gave him a synopsis of the offense.

Hubanks testified that she forgot to pay for the items as she left the store with her father and that she never intended to steal the merchandise. Regarding her written admission to the theft, Hubanks stated:

[The employees in the loss prevention department] kept telling me I had to sign this, but they wouldn't explain to me what was going on. I tried to tell them that I didn't know what they were trying to explain to me that they weren't explaining it well and I needed them to tell me what I was signing and they just kept telling me that I needed to sign it.

She said that she never would have done anything to expose her father to criminal charges. Hubanks stated that she had enough money in her purse the day of her arrest to purchase the items that she was accused of stealing.

**Sentencing Hearing.** The presentence investigation report was entered into evidence, which showed that Hubanks had two prior convictions for shoplifting in 2007 and 1992. Thomas Davis, Hubanks' father, testified that he was aware of her prior shoplifting convictions. He acknowledged that Hubanks "had some problems" but stated that he did not believe that Hubanks would have exposed him to criminal charges while they were together. He also said that Hubanks was "an excellent mother." Hubanks testified that she did not work and stayed at home to care for her three-year-old daughter. She acknowledged that she was arrested for shoplifting in 1992 but claimed that she was a minor, even though the presentence investigation report stated that she was eighteen years old at the time. She also admitted to the 2007 shoplifting conviction. Hubanks read a statement to the trial court in

which she reiterated that she had no intention to steal the merchandise, alleged inconsistencies in the State's evidence, failed to express any remorse regarding the offense, and neglected to discuss how her imprisonment would negatively affect her daughter and husband. Hubanks' husband did not testify.

The trial court applied two enhancement factors in this case, namely that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range" and that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." T.C.A. § 40-35-114(1), (8) (2006). Regarding factor (8), the trial court noted that Hubanks "was on probation out of McNairy County General Sessions Court [for the 2007 shoplifting conviction] when she committed this offense of theft of property on January the 4th [sic] of 2008." The court applied one mitigating factor, namely that "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." T.C.A. § 40-35-113(1). However, the court noted that this crime was a non-violent offense. The trial court emphasized that Hubanks "failed to accept responsibility for her actions." Regarding the issue of alternative sentencing, the court concluded:

> [W]hat really concerns me is that if you are on probation for theft of property then you have to make absolutely sure that you don't do anything that might violate your probation[;] yet about six months after going on probation, she is here in Madison County at the Sears store trying on gloves and trying on a scarf and walking around the store, removing the price tags and walking right out of the store. You know, she just has no regard to follow the law. The Court finds that in this particular case that measures less restrictive than confinement have recently been applied to this defendant without success.

Ultimately, the court stated that "some period of shock incarceration is necessary to avoid depreciating the seriousness of this offense especially in light of these two prior convictions for theft and also in light of the fact that she was on probation when she committed this theft." The trial court sentenced her to eleven months and twenty-nine days and ordered her to serve 180 days of confinement day-for-day in the county jail before serving the balance of her sentence on supervised probation. The court also ordered that she complete behavioral counseling and pay the fines and court costs. The judgment was entered on September 5, 2008. Hubanks did not file a motion for a new trial; however, she filed an untimely notice of appeal on October 21, 2008.

## ANALYSIS

**I. Failure to File a Timely Notice of Appeal.** We must initially address Hubanks' failure to file a timely notice of appeal before addressing her other claims. Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed

with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996). This court has concluded: "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

Here, Hubanks was convicted of one count of theft of property valued at $500 or less and was sentenced to eleven months and twenty-nine days, with 180 days of confinement to be served day-for-day in the county jail and the balance to be served on supervised probation on September 5, 2008. Hubanks' appointed counsel then filed a notice of appeal on October 21, 2008, forty-six days after the date of entry of the judgment. We note that Hubanks' attorney failed to file a motion to waive the late filing of the notice of appeal document and failed to provide an explanation for his untimely filing. However, given that the notice of appeal was untimely by only sixteen days, we conclude that the "interest of justice" is best served by granting a waiver in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

**II. Sufficiency of the Evidence.** Hubanks argues that the evidence was insufficient to convict her of the theft of property offense. Specifically, she contends that the jury erred by failing to accredit her testimony that she mistakenly left the store without paying for the merchandise. In response, the State argues that the conviction should be affirmed because credibility determinations are "the prerogative of the jury."

When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978)), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

The law provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 29-14-103. Theft of property is a Class A misdemeanor "if the value of the property or services obtained is five hundred dollars ($500) or less[.]" Id. § 39-14-105(1).

Here, David Barnett testified that he saw Hubanks take the gloves and scarf, walk past two cash registers, and exit the store with her father without paying for the merchandise. The video surveillance tape showing Hubanks' actions within the store was shown to the jury. When the items were recovered, the price tag had been removed from the gloves and was later found in the Hubanks' coat pocket. Hubanks at first denied stealing the merchandise but later made a written statement admitting to the theft. Although she claimed that she mistakenly took the items and never intended to steal them, it was the jury's right to accredit Barnett's testimony over Hubanks' testimony. Because the proof was more than sufficient to support the conviction, the trial court's judgment is affirmed.

**III. Sentence.** Hubanks argues that the trial court erred in ordering her to serve 180 days of confinement, erred in ordering that the 180 days of confinement to be served day-for-day, and erred in denying full probation. In response, the State acknowledges that the trial court erred in requiring that the 180 days of confinement be served day-for-day; however, it contends that in all other respects the sentence is proper and the judgment should be affirmed.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies

the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments. This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial court in this case properly considered the sentencing principles and all relevant facts and circumstances, our review is de novo with a presumption of correctness. See Ashby, 823 S.W.2d at 169.

> A trial court, when sentencing a defendant must consider the following:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007), perm. to appeal denied (Tenn. Jan. 28, 2008).

The sentencing court is granted considerable latitude in misdemeanor sentencing. See, e.g., State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). A separate sentencing hearing is not mandatory in misdemeanor cases; however, the court must provide the defendant with a reasonable opportunity to be heard regarding the length and manner of the sentence. See T.C.A. § 40-35-302(a) (2006). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. Id. §§ 40-35-104, -302 (2006); State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an "authorized determinant sentence,"and "a percentage of that sentence, which the offender must serve before becoming eligible for consideration for rehabilitative programs, must be designated." Palmer, 902 S.W.2d at 394. Typically, a percentage not greater than 75 percent of the sentence should be fixed for a misdemeanor offender. Id. at 392. A convicted misdemeanant, unlike a felon,

has no presumption of entitlement to a minimum sentence. See State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). The misdemeanor sentencing statute requires that the trial court consider the enhancement and mitigating factors as well as the purposes and principles of sentencing when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2006); see also State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

**A. Length of Sentence.** Hubanks contends that the length of her confinement is excessive. Our review of the record shows that the trial court considered the purposes and principles of the sentencing act and applied two enhancement factors and one mitigating factor before requiring her to serve 180 days in the county jail. At the sentencing hearing, the trial court placed particular emphasis on Hubanks' lack of remorse. It also stated that "some period of shock incarceration is necessary to avoid depreciating the seriousness of this offense especially in light of these two prior convictions for theft and also in light of the fact that she was on probation when she committed this theft." Regarding Hubanks' arrest in this case while on probation for a prior shoplifting case, the court said, "[I]n this particular case . . . measures less restrictive than confinement have recently been applied to this defendant without success." We specifically note that Hubanks' testimony and statement to the court at the sentencing hearing included no declaration of remorse and no discussion of how her imprisonment would negatively affect her daughter and husband. Upon review of the record, we conclude that the trial court's imposition of 180 days in confinement was not excessive.

We also must address an issue regarding the judgment form. We note that the judgment form is blank regarding the percentage of the sentence which the defendant must serve before being eligible for work release, furlough, trusty status, and rehabilitative programs. See T.C.A. § 40-35-302(d) (2006). This code section requires that when the trial court fails to designate a percentage of service for a misdemeanor sentence, the percentage shall be zero. Id. However, the requirement does not apply when the transcript from the sentencing hearing shows that the trial court intended a period of continuous confinement. State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999); see also State v. Josh Moon, No. E2000-00690-CCA-R3-CD, 2001 WL 237348, at *3 (Tenn. Crim. App, at Knoxville, Mar. 6, 2001). Here, the transcript shows that the trial court intended for Hubanks to serve 180 days in continuous confinement with a percentage of service of 75 percent. Therefore, we remand for entry of a corrected judgment to insert a service percentage of 75 percent.

**B. Day-for-Day Incarceration.** Hubanks also contends that the trial court erred in ordering that the 180 days of confinement be served day-for-day. It is undisputed that a defendant who is sentenced to a county jail or workhouse for less than one year has a statutory right to earn good conduct credits, and this right may not be denied by a trial court. T.C.A. § 41-2-111(b); see also State v. Clark, 67 S.W.3d 73, 78 (Tenn. Crim. App. 2001).

In addition, "any trial court sentencing order that extends the term of confinement beyond that allowed by law relative to release eligibility and sentencing credits is improper." State v. James Kevin Underwood, No. E2000-01945- CCA-R3-CD, 2001 WL 872436, at *3 (Tenn. Crim. App, at Knoxville, Aug. 2, 2001). Therefore, we also remand for entry of a corrected judgment to remove the day-for-day provision from the 180 days of confinement.

**C. <u>Probation.</u>** Hubanks contends that the trial court erred in refusing to grant full probation. We note that "the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2006); <u>see also</u> Ashby, 823 S.W.2d at 169.

On the other hand, a defendant is eligible for probation if the actual sentence imposed is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See T.C.A. § 40-35-303(a) (2006). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b) (2006). In other words, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (2006), Sentencing Comm'n Comments. In order to meet the burden for establishing suitability for probation, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)), <u>overruled on other grounds</u> <u>by</u> State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). When considering probation the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). The

court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. <u>See</u> T.C.A. § 40-35-103(5) (2006).

Here, the trial court emphasized that Hubanks "failed to accept responsibility for her actions" in the instant case. Because Hubanks committed the instant theft while on probation for her 2007 shoplifting conviction, the court stated "that measures less restrictive than confinement have recently been applied to this defendant without success." Finally, the trial court found that "some period of shock incarceration is necessary to avoid depreciating the seriousness of this offense especially in light of these two prior convictions for theft and also in light of the fact that she was on probation when she committed this theft." The record shows that Hubanks failed to meet her burden of establishing suitability for full probation. Accordingly, we conclude that the trial court did not err in denying full probation in this case.

## CONCLUSION

Upon review of the record, we affirm the trial court's judgment but remand for entry of a corrected judgment to remove the day-for-day provision from the 180 days of confinement and to insert a service percentage of 75 percent.

_____
CAMILLE R. McMULLEN, JUDGE